# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CASE NO. 5:16-CV-00072-RLV-DSC

|  |  |  |
|---|---|---|
| PRO STEP MARKETING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| REAL ESTATE WEBMASTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

  **THIS MATTER IS BEFORE THE COURT** on Defendant Real Estate Webmasters,

Inc.'s Motion to Dismiss under the doctrine of *forum non conveniens*, and under Rule 12(b)(3) of

the Federal Rules of Civil Procedure. (Doc. 10).[1] Defendant argues the present case should be

dismissed on the grounds of *forum non conveniens* because the most appropriate forum is the court

system of the Province of British Columbia, and second, in the alternative, the case should be

dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on the basis of

improper venue. (Doc. 8). Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss.

(Doc. 15). No reply brief has been filed by Defendant and the time for filing has elapsed.

Accordingly, Defendant's Motion to Dismiss is now ripe for disposition. The Court finds

dismissal under the doctrine of *forum non conveniens* appropriate, and therefore, for the reasons

set forth below, Defendant's Motion to Dismiss (Doc. 10) is **GRANTED**.

---

[1] Defendant's initial Motion to Dismiss (pursuant to Fed. R. Civ. P. 12(b)(3)) was improperly incorporated into its
Answer (Doc. 6). Defendant contemporaneously filed a memorandum in support of that motion to dismiss (Doc. 8).
By text order dated June 7, 2016, Defendant was directed to file a separate motion to dismiss. Defendant did so on
June 9, 2016 (Doc. 10). The parties appear to have treated the original memorandum in support (Doc. 8) as
corresponding to the proper motion (Doc. 10) and the Court will do so as well.

# I.    PROCEDURAL AND FACTUAL BACKGROUND

In August of 2015, Pro Step Marketing, Inc. ("Plaintiff") entered into a purchase agreement[2] (the "Agreement") with Real Estate Webmasters, Inc. ("Defendant").  (Doc. 1-1 at 5). The Agreement provided that Defendant would purchase selected operating assets from Plaintiff for up to $250,000, but not less than $150,000.  (Doc. 17 at 4).[3]  The selected operating assets included: Plaintiff's customer base; any and all of Plaintiff's lead databases; Plaintiff's trade name; all intellectual property of the Plaintiff; website domains and necessary software for the operation of the Plaintiff's website; Plaintiff's branding tools; and all of Plaintiff's accounts.  (*Id.* at 5-6). Defendant was to pay a deposit of $50,000 at the closing, and an additional $200,000 was to be paid in installments of $50,000, every 120 days, provided that 90% of the hosting account's revenue at the closing remained at each payout date.  (*Id.* at 6).

The Agreement also contained a forum-selection clause that stated: "[a]ll agreements and other documents will be governed by and construed in accordance with the laws of the Province of British Columbia and the federal laws of Canada applicable in such province and the parties hereto irrevocably attorn to the jurisdiction of the courts of such province."  (*Id.* at 10).  The Agreement further stated that "[t]he parties will negotiate the terms and conditions of a definitive agreement which shall supersede this Agreement (the 'Definitive Agreement') and related

---

[2] Plaintiff refers to this communication as the "Letter of Intent" in its Brief in Opposition to Defendant's Motion to Dismiss.  (Doc. 15 at 1).

[3] A court may rely on documents that are "integral to and explicitly relied on in the complaint" so long as the non-moving party does not challenge the document's authenticity.  *Phillips v. LCI, Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  Here, the parties jointly tendered the terms of the Agreement itself (*see* Doc. 17 at 4-11), and the terms of the September 30, 2015 Addendum itself (*see* Doc. 17 at 13-14).  (Doc. 17 at 1).  Since neither party challenges the authenticity of either document jointly offered, and because it is integral and expressly relied on in the Complaint, this Court may properly consider the Agreement and the September 30, 2015 Addendum at this juncture.

documentation, which will set forth all of the terms and conditions of the Transaction . . . ." (*Id.* at 4).

On September 30, 2015, Plaintiff and Defendant executed a letter that was to serve as an addendum (the "September 30 Addendum") to the Agreement. (*Id.* at 13). The September 30 Addendum stipulated, "[t]he terms of the Agreement executed on August 28th, 2015 and this Addendum become the Definitive Agreement for the purchase of the selected operating assets of Pro Step." (*Id.*). The September 30 Addendum did not explicitly restate the forum-selection clause contained in the Agreement. (*Id.*).

Plaintiff filed suit against Defendant in the General Court of Justice, Superior Court Division, of Lincoln County, North Carolina, alleging one count of breach of contract. (Doc. 1-1 at 2). Subsequently, Defendant removed the case to this Court in May of 2016. (Doc. 1). Defendant also filed suit against Plaintiff in a civil action in the Supreme Court of British Columbia,[4] alleging six causes of action for Breach of the Agreement, Breach of the Duty of Good Faith, Misrepresentation, Breach of the Non-Solicitation Clause, Breach of Confidentiality, as well as personal liability against Patricia Andreassen (President of Pro Step Marketing, Inc.). (Doc. 8 at 2).

Defendant, in the instant case, filed a motion to dismiss for improper venue pursuant to the doctrine of *forum non conveniens*, and under Rule 12(b)(3) of the Federal Rules of Civil Procedure. (Doc. 10). Defendant claims the forum-selection clause contained in the Agreement is reasonable and mandatory, and therefore is valid and enforceable, because (1) the forum-selection clause was not fraudulently induced; (2) the forum-selection clause was contained expressly in the Agreement; (3) the forum-selection clause is not violative of public policy; and (4) the forum-

---

[4] The Supreme Court of British Columbia is the superior trial court for the Province of British Columbia, Canada.

selection clause contains language, such as the phrase "hereto irrevocably attorn" as well as the words "all" and "will," which gives jurisdiction exclusively to the courts of the Province of British Columbia. (Doc. 8). Plaintiff maintains that this Court is the proper venue and argues the forum-selection clause is invalid and permissive because (1) it was prepared and executed without the assistance of legal counsel; (2) it is violative of public policy; (3) it was not ultimately included in the Definitive Agreement; and (4) the term "attorn" does not represent mandatory or exclusive language. (Doc. 15). Both parties have stipulated to the admissibility of certain documents for the purposes of this motion. (Doc. 17 at 1).

## II.  DISCUSSION

### A.  Standard of Review

 "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). The "'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The doctrine of *forum non conveniens* and 28 U.S.C. § 1404(a) are proper procedural mechanisms in federal court for the enforcement of a forum-selection clause. *Id.* at 579-80. Transfer pursuant to § 1404(a) is the prescribed enforcement mechanism of transfer when a forum-selection clause "point[s] to a particular federal district." *Id.* at 579. However, dismissal pursuant to the doctrine of *forum non conveniens* is "the appropriate way to enforce a forum-selection clause pointing to a state or *foreign forum* . . . ." *Id.* at 580 (emphasis added). Further, a valid forum-selection clause pointing to a foreign forum should be "given controlling weight in all but the most exceptional cases." *Id.* at 579.

The common-law doctrine of *forum non conveniens* permits "a district court having jurisdiction and proper venue to dismiss an action in its discretion because the action is more appropriate for resolution in a foreign jurisdiction." *Slight By & Through Slight v. E.I. DuPont De Nemours & Co.*, 979 F. Supp. 433, 436-37 (S.D. W. Va. 1997). In order to dismiss a case under the doctrine of *forum non conveniens*, "'dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum.'" *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011) (quoting *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312 (4th Cir. 1984)). In making this determination, the Court must consider whether an alternative forum is: (1) available; (2) adequate; and (3) more convenient in light of the public and private interest factors involved. *See* 656 F.3d at 248. "[T]he defendant has the burden of proof to show the existence of an alternate, adequate, and available forum." *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010). Further, "'a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed.'" *Datasouth Computer Corp. v. Three Dimensional Tech.'s, Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989) (quoting *Western Steer—Mom 'N' Pop's, Inc. v. FMT Inv.'s, Inc.*, 578 F. Supp. 260, 265 (W.D.N.C. 1984)).

The requirement that an alternative forum be available is generally satisfied when the defendant is merely "amenable to process" in the foreign jurisdiction. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947)). The requirement that an alternative forum be adequate is satisfied when "'(1) all parties can come within that forum's jurisdiction, and (2) the parties will not 'be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'"" *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 Fed. App'x 84, 90 (4th Cir. 2007)

(unpublished per curiam) (quoting *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991)). "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Piper Aircraft*, 454 U.S. at 254 n. 22.

The court must first consider the availability and adequacy requirements, and after a determination that they are both met, the court must then weigh the public and private interest factors. *See Tang*, 656 F.3d at 249. The private interest factors include:

> the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'

*Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 508). The public interest factors include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (citing *Gilbert*, 330 U.S. at 508-09).

B.     Discussion

The United States Supreme Court, in *Atlantic Marine*, 134 S. Ct. 568 (2013), held that the presence of a valid forum-selection clause "requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 581.[5] First, the plaintiff's initial choice of forum is given no weight,

---

[5] 28 U.S.C. § 1404(a) governs transfer only within the federal court system. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens* . . . . And because both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way they evaluate a forum-selection clause pointing to a federal forum." 134 S. Ct. at 580.

and the burden shifts to the party opposing the forum-selection clause to establish that transfer to the forum stated in the clause is unwarranted. *Id.* at 581. Second, the district court should not consider the private interests of the parties, and should assume the private interest factors weigh entirely in favor of the forum specified in the forum-selection clause, since "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *Id.* at 582 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972)). As a result, the district court should consider only the public interest factors, as opposed to weighing both the public and private interest factors. *Id.* Furthermore, the public interest factors will rarely defeat a transfer motion; thus, "the practical result [will be] that [the] forum-selection clause[] should control except in unusual cases." *Id.* at 582. Third, the original venue's choice-of-law rules will not be applied by the transferee venue. *Id.*

This modified *forum non conveniens* analysis however, arises only when a *valid* forum-selection clause is present. *Atl. Marine*, 134 S. Ct. at 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). Focusing on this limitation in applying the modified *forum non conveniens* analysis, Plaintiff repeatedly argues the forum-selection clause contained in the Agreement is invalid and should be unenforceable. The Court, therefore, must first determine the validity of the forum-selection clause in this case.

A forum-selection clause is presumed valid and should be enforced unless it is found to be unreasonable under the circumstances. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *The Bremen*, 407 U.S. at 10. A forum-selection clause may be found unreasonable if "(1)

[its] formation was induced by fraud or overreaching;[6] (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state." *Allen*, 94 F.3d at 928.

Here, Plaintiff has not shown that the forum-selection clause is unreasonable; therefore, it is valid and must be enforced. First, the formation of the agreement was not induced by fraud or overreaching. Both parties are professional companies with, presumably, extensive business experience. (*See* Doc. 1-1). There is also no evidence to indicate that the parties possessed unequal bargaining power in the contract formation process. *See AC Controls Co. v. Pomeroy Computer Res., Inc.*, 284 F. Supp. 2d 357, 361 (W.D.N.C. 2003) (using as evidence the fact that the two parties were sophisticated businesses to determine the forum-selection clause was not induced by fraud or overreaching). Although Plaintiff argues its president, Patricia Andreassen, did not have legal counsel when signing the Agreement, it concedes that neither did the Defendant. (Doc. 15 at 7).

Further, the forum-selection clause was bargained for and explicitly stated in a stand-alone paragraph in the Agreement. (*See* Doc. 17 at 10). Plaintiff argues that since the clause was not expressly re-stated in the September 30 Addendum to the original Agreement (or "Letter of Intent" as Plaintiff prefers) it was, therefore, rejected by Plaintiff, and not included in the ultimate "Definitive Agreement," which was to form the final contract. (Doc. 15 at 2). Plaintiff's argument is unavailing. The September 30 Addendum states "[t]he terms of the Agreement executed on

---

[6] Overreaching relates to one party taking advantage of another through the use of unfair negotiation practices or fraudulent inducement in the formation or execution of a contract. *See S. Farm Supply, Inc. v. Arctic Cat Sales, Inc.*, 2011 WL 2791247, at *3 (W.D.N.C. July 14, 2011) (Voorhees, J.).

August 28th, 2015 *and* this Addendum *become* the Definitive Agreement for the purchase of selected operating assets of Pro Step." (Doc. 17 at 13) (emphases added). The inclusion of the word "and" clearly demonstrates the parties' intent to incorporate the terms of the Agreement with the September 30 Addendum, in order to form the final contract. If only the terms expressly included in the September 30 Addendum formed the entirety of the contract between the parties, the contract would be void of basically every material term the parties intended to include, particularly the purchase price and the assets to be purchased. (*See* Doc. 17 at 4-7); *see also Johnson v. Johnson*, 418 B.R. 682, 685 (E.D.N.C. 2009) (emphasizing that, under North Carolina law, a valid contract "'require[s] sufficient certainty and specificity with regard to material terms'" (quoting *Jackson v. Jackson*, 610 S.E.2d 731, 732-33 (N.C. App. 1992), *rev'd on other grounds,* 620 S.E.2d 862 (2005))). Ultimately, the parties' placement of the forum-selection clause in the contract lacks any sign of fraud or overreaching, and is a clear expression of the parties' intentions as to the desired forum.

Second, Plaintiff would not be deprived of its day in court because of grave inconvenience or unfairness in the selected forum. In order to establish unreasonableness, the party opposing enforcement of the forum-selection clause has a heavy burden of showing that "trial in the contractual forum [would] be so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of [its] day in court." *The Bremen*, 407 U.S. at 18. Plaintiff states that all of its witnesses are in North Carolina or "other U.S. States." (Doc. 15 at 3). In reference to "other U.S. states," Plaintiff is most likely referring to EZOT, Inc., the hosting provider, which is located in Houston, Texas. (Doc. 1-1 at 5). Presumably, the burden Plaintiff would experience bringing witnesses interstate is not significantly greater than bringing witnesses internationally to Canada. In fact, this Court has concluded, with respect to diversity cases, ". . . whichever forum

is ultimately selected will inevitably burden 'one side or the other' by requiring them to 'bring []
themselves and their witnesses from [another state].'" *AC Controls Co.*, 284 F. Supp. 2d at 361-
62 (quoting *Republic Mortg. Ins. v. Brightware, Inc.*, 35 F. Supp. 2d 482, 487 (M.D.N.C. 1999)).
Further, as Defendant notes, and as the Court notes *infra*, Defendant has already brought suit
against Plaintiff in the courts of the Province of British Columbia. Thus, Plaintiff will still be
forced to litigate in, and bring its witnesses to, Canada regardless of where this case is heard.
Therefore, it cannot be said that Plaintiff has adequately shown that the burden of litigating in
Canada would deprive it of its day in court because of grave inconvenience or unfairness.

Third, the fundamental fairness of the chosen law will not deprive Plaintiff of a remedy.
Plaintiff has made no argument that remedies available in this Court are unavailable for a breach
of contract action in the courts of the Province of British Columbia.

Fourth, the enforcement of the forum-selection clause does not contravene a strong public
policy of this state. Under North Carolina law, "any provision in a contract entered into in North
Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted
or heard in another state is against public policy and is void and unenforceable."[7] N.C. Gen. Stat.
§ 22B-3 (1995). Defendant argues the statute is applicable only insofar as it prohibits a suit from
being transferred to another state, and not to foreign countries or other political entities outside the
United States. It emphasizes, "the statute's plain and literal language relates to a forum selection
clause designating another *state*, not a foreign country." (Doc. 8 at 13 (emphasis added)). The
plain language of the statute uses "North Carolina" in conjunction with the use of "another state,"
indicating the North Carolina State Legislature intended "state" to be interpreted as meaning one
of the fifty U.S. states, as opposed to a political division outside the United States. The parties are

---

[7] The Court assumes the contract was entered into in North Carolina, without deciding the matter.

assumed to know the law, and therefore, the Court finds that the Province of British Columbia does not fall within the purview of the term "state" as it is used within the meaning of the statute. Since the forum-selection clause in this matter points to Canada, a foreign country, the plain language of the statute renders it inapplicable in the present case.

However, even if the statute did apply, the United States Court of Appeals for the Fourth Circuit has nevertheless enforced forum-selection clauses when they are violative of N.C. Gen. Stat. § 22B-3. *See Allen*, 94 F.3d at 928 (enforcing the forum-selection clause in that case even though it violated public policy*)*. Further, in *Stewart*, the Supreme Court held that federal law should be used in determining the validity of forum-selection clauses, and the fact that a forum-selection clause violates a public policy statute should be but one, non-dispositive factor in a multi-factor analysis. *See Stewart Org.*, 487 U.S. at 30-32. This Court has applied the *Allen* decision previously by enforcing a forum-selection clause that contravened public policy: "[a]fter *Stewart*, the fact that the forum selection clause violated the public policy of North Carolina is not by and of itself sufficient to render the clause unreasonable." *Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 242 (W.D.N.C. 2008) (quoting *James C. Greene Co. v. Great Am. E & S Ins. Co.*, 321 F. Supp. 2d 717, 721 (E.D.N.C. 2004)); *see Rice v. Bellsouth Adver. & Publ'g Corp.*, 240 F. Supp. 2d. 526, 528 (W.D.N.C. 2002) ("Under *Stewart*, this [c]ourt should take North Carolina's public policy into consideration as a factor in determining whether to transfer [the] case. Like the forum selection clause itself, North Carolina's public policy should not be determinative."). Moreover, Plaintiff concedes that a forum-selection clause violating § 22B-3 is not dispositive. (Doc. 15 at 5). Therefore, because Plaintiff has failed to show that any of the four factors provided by *Allen* support a finding of unreasonableness, this Court finds that the forum-selection clause is valid and thus, enforceable.

The next question this Court must address is whether the forum-selection clause in this case is mandatory or permissive. A mandatory forum-selection clause gives the designated forum exclusive jurisdiction over any dispute, whereas a permissive clause confers jurisdiction over the parties within the designated forum, but does not necessarily grant exclusive jurisdiction. *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008). A forum-selection clause is presumed permissive unless, ". . . some further language that indicates the parties' intent to make jurisdiction exclusive[]" is present. *Scotland Mem'l Hosp., Inc., v. Integrated Informatics, Inc.*, 2003 WL 151852, at *4 (M.D.N.C. Jan. 8, 2003) (quoting *Mark Group Int'l, Inc. v. Still*, 566 S.E.2d 160, 162 (N.C. App. 2002)).

Here, this Court finds the forum-selection clause at issue mandatory. The language in the forum-selection clause in the present case states as follows: "[a]ll agreements and other documents will be governed by and construed in accordance with the laws of the Province of British Columbia and the federal laws of Canada applicable in such province and the parties hereto irrevocably attorn to the jurisdiction of the courts of such province." (Doc. 17 at 10). Defendant argues the terms "all," "will," and "irrevocably attorn" are examples of exclusive and mandatory language. (Doc. 8 at 15). It further argues that the language, when read in context of the entirety of the Agreement, demonstrates an intent by both parties that jurisdiction would be conferred to the courts of the Province of British Columbia, as is explicitly stated in the clause. *Id.* In response, Plaintiff argues that the term "attorn" is not an example of mandatory language, and does not "show a meeting of the minds that Canada would be the mandatory forum." (Doc. 15 at 2).

Defendant compares the language "all" and "will" in the present forum-selection clause with the use of the terms "any" and "shall" in forum-selection clauses in *Bryant Elec. Co. v. City of Fredericksburg*, 762 F.2d 1192 (4th Cir. 1985), and *Southern Farm Supply*. In *Bryant*, the

Fourth Circuit enforced a forum-selection clause that provided, "[*a*]*ll* claims, disputes and other matters in question between OWNER [Fredericksburg] and CONTRACTOR [Bryant] arising out of, or relating to the Contract Documents or the breach thereof, . . . *shall* be decided by the Circuit Court of the City of Fredericksburg." *Bryant*, 762 F.2d at 1196 (emphasis added). In *Southern Farm Supply*, this Court found a forum-selection clause mandatory that stated, "[*a*]*ny* claim, action, or other dispute between the parties as to the terms of the Agreement . . . or as to any other matter arising out [of] the parties' relationship, *shall* be resolved by the State or Federal Courts of the State of Minnesota." *S. Farm Supply*, 2011 WL 2791247, at *2 (emphasis added). This Court in *Southern Farm* reasoned the clause was mandatory because the exclusive language of "any" and "shall" indicated specific intent for venue in Minnesota. *Id.* The Court notes, however, that the terms "all" and "will" in this case appear in the first part of the clause, which focuses on which law applies rather than forum selection.

Defendant argues that the phrase "irrevocably attorn" should be considered an example of "further language" that demonstrates the parties' intent to make jurisdiction exclusive in the stated forum. (Doc. 8 at 15). A number of courts have confronted similar language as "irrevocably attorn" in other forum-selection clauses, and some courts have held them to be mandatory. *See, e.g.*, *Sherman v. PremierGarage Sys.'s, LLC*, 2010 WL 3023320, at *5 (D. Ariz. July 30, 2010) ("This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein and each of the parties hereto agrees irrevocably to attorn to the jurisdiction of the courts of the said Province"; considered in conjunction with language in a related document indicating exclusivity); *Sick Kids (Need) Involved People of N.Y., Inc. v. 1561599 Ontario, Inc.*, 2015 WL 5672042, at *2 (S.D.N.Y. Sep. 25, 2015) (". . . each of the parties hereto irrevocably attorns to the exclusive jurisdiction of the courts of the

Province of Ontario . . . ."); *Xantrex Tech. Inc. v. Advanced Energy Indus.'s, Inc.*, 2008 WL 2185882, at *5 (D. Col. May 23, 2008) ("The validity, construction and performance of this letter agreement will be governed exclusively by the laws of the Province of British Columbia and you and the Corporation irrevocably and exclusively attorn to the jurisdiction of the courts of British Columbia and agree that any proceeding brought in respect of this letter agreement will be brought in such of those courts as is appropriate.").  On the other hand, other courts have held the phrase "irrevocably attorn," or phrases similar, to be permissive.  *See, e.g.*, *UEK Corp. v. Univ. of Manitoba*, 2015 WL 11027769, at *1 (D. Md. Mar. 26, 2015) ("[t]his Agreement shall be construed according to and governed by the laws of the Province of Manitoba, and the parties irrevocably attorn to the jurisdiction of the Courts thereof"); *Southridge Ethanol, Inc. v. S. La. Ethanol LLC*, 2007 WL 2375758, at *6 (N.D. Tex. Aug. 16, 2007) ("This Letter of Intent will be governed by and construed in accordance with the law of the State of Louisiana and the parties hereby attorn to the jurisdiction of the Courts of competent jurisdiction of the State of Louisiana in any proceeding hereunder."); *Magellan Real Estate Inv. Trust v. Losch*, 109 F. Supp. 2d. 1144, 1149 (D. Ariz. 2000) ("The parties hereto irrevocably attorn to the jurisdiction of the courts of the Province of Ontario to resolve any dispute which may arise among them concerning this Agreement and the subject matters hereof."); *Simon v. Foley*, 2011 WL 4954790, at *4 (W.D.N.Y. Oct. 18, 2011) ("This Agreement shall be construed and enforced in accordance with, and the rights of the parties hereto shall be governed by, the laws of the Province of Ontario.  Each of the parties hereto irrevocably attorns to the jurisdiction of the courts of the Province of Ontario.").

While cognizant of the fact that a number of other district courts have held forum-selection clauses containing the phrase "irrevocably attorn" to be permissive, the Court nevertheless interprets this language, in context of the entirety of the agreement, as conveying exclusive

jurisdiction to the courts of the Province of British Columbia. The word "attorn" is defined as "[t]o turn over; to transfer to another money or goods; to assign to some particular use or service." *Attorn*, Black's Law Dictionary (6th ed. 1990). Primarily a real property term, the word "attorn" clearly demonstrates an intention to transfer, albeit referring to "money or goods" in its definition. The word "irrevocable" is defined as "[i]mpossible to retract or revoke." *Irrevocable*, The American Heritage Dictionary (5th ed. 2016). "[I]rrevocably," as it is used in the forum-selection clause in this case, serves as an amplifier for the word "attorn," demonstrating a sense of exclusivity and urgency. Thus, the Court interprets the phrase "irrevocably attorn" as establishing intent on the part of both parties to submit all disputes arising from the agreement to the courts of the Province of British Columbia, and is satisfied the use of the phrase "irrevocably attorn" is language making jurisdiction in British Columbia exclusive.

Therefore, the Court finds the forum-selection clause in this case to be both mandatory and valid. As a result, the Court will adhere to the modified *forum non conveniens* approach as espoused in *Atlantic Marine*. In conducting this modified analysis the Court will make the following changes to the traditional *forum non conveniens* analysis discussed *infra*: (1) it will not give any weight to the Plaintiff's initial choice of forum as a factor and (2) it will disregard the parties' private interests. *See Atl. Marine*, 134 S. Ct. at 581-82. Since the parties are already bound by a choice-of-law clause requiring Canadian law be applied to any dispute arising out of the contract, the third prong of the modified *Atlantic Marine* analysis does not affect the present modified *forum non conveniens* analysis in this case. The Supreme Court further emphasized that a district court conducting a modified venue analysis because of the presence of a valid forum-selection clause "must deem the private-interest factors to weigh entirely in favor of the preselected forum[,]" and may only consider the relevant public interest factors. *Id.* at 582. Further, the party

opposing the forum-selection clause bears the burden of establishing that transfer away from the original venue is unwarranted. *See id.* at 581; *see also Giammattei v. Bertram Yacht, Inc.*, 2010 WL 2593612, at *3 (W.D.N.C. June 23, 2010). Finally, a valid forum-selection clause will be a central and significant factor in a district court's analysis. *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991).

First, the Court finds that the courts of the Province of British Columbia provide an available alternative forum. The forum is available considering Plaintiff has made itself amenable to process in the Province of British Columbia by agreeing to a valid forum-selection clause. The Court also finds the courts of the Province of British Columbia are adequate. In order to be inadequate the foreign forum must provide a remedy that is clearly unsatisfactory, which arises only in rare circumstances. *Piper Aircraft*, 454 U.S. at 254 n.22 ("Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.").

Here, no such situation exists. As Defendant points out, the two parties are also parties to pending litigation regarding the same contractual dispute in British Columbia, which mirrors the breach of contract claim filed in this Court. It is thus clear that Plaintiff is not precluded from obtaining a remedy in the courts of the Province of British Columbia. The Court, therefore, agrees with Defendant and finds that the courts of the Province of British Columbia provide an adequate and available alternative.

Second, in accordance with *Atlantic Marine*, the Court does not weigh the private interest factors of the parties. Instead, in light of the fact that the parties agreed to a valid forum-selection clause, each private interest factor will be weighed in favor of dismissal. *Atl. Marine*, 134 S. Ct. at 582.

Third, the Court finds the relevant public interest factors weigh in favor of dismissal as well. The relevant public interest factors include:

> administrative difficulties flowing from court congestion; 'the local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (citing *Gilbert*, 330 U.S. at 508-09). The rationale behind avoiding problems related to applying foreign law applies directly in this matter. The forum-selection clause contained in the parties' Agreement clearly indicates that Canadian law is applicable to the instant action. It states, "[a]ll agreements and other documents will be governed by and construed in accordance with the laws of the Province of British Columbia and the federal laws of Canada applicable in such province . . . ." (Doc. 17 at 10). As a result, the Defendant points out that the state of North Carolina has minimal interest in a breach of contract action in which the parties agreed to be bound by Canadian law. This Court agrees, and determines it would be needlessly burdened in attempting to "untangle problems in conflict of laws, . . ." in applying Canadian law, while the courts of the Province of British Columbia would not have this problem. *Gilbert*, 330 U.S. at 509; *see, e.g., Wolff v. Zip.ca, Inc.*, 2009 WL 1628887, at *3 (M.D.N.C. June 10, 2009) ("Although this does not rule out hearing the case in North Carolina, the court would be applying foreign law in a dispute involving the financial problems of a Canadian baseball team. This matter is best handled by the courts in Ottawa. Accordingly, the court will recommend dismissal of the action on *forum non conveniens* grounds.").[8]

---

[8] This citation refers to a Magistrate Judge's memorandum opinion and recommendation, which was adopted on Aug. 26, 2009.

Further, the fact that Defendant has filed suit against Plaintiff in the courts of the Province of British Columbia, pertaining to the same breach of contract issue, weighs heavily in favor of dismissal. The forum-selection clause requires Canadian courts, applying Canadian law, to hear this matter. Plaintiff is also already a party to a suit in Canada, pertaining to the same claims at issue in this case. Therefore, it is more appropriate and expeditious for the courts of the Province of British Columbia to hear this matter. Accordingly, the court will dismiss this action on *forum non conveniens* grounds.

In addition, the Court holds that, even assuming the forum-selection clause in this case was merely permissive, dismissal on *forum non conveniens* grounds would nevertheless be appropriate under the traditional *forum non conveniens* test. The Supreme Court has been silent as to whether its modified *forum non conveniens* analysis applies solely to mandatory, as opposed to both mandatory and permissive, forum-selection clauses. The Fourth Circuit has also been silent on this matter. *See UEK Corp.*, 2015 WL 11027769, at *2 (noting the Fourth Circuit has not yet addressed the issue of whether the holding in *Atlantic Marine* should be applied to permissive forum-selection clauses). The majority of courts, however, have drawn a distinction in applying the modified *Atlantic Marine* analysis in cases of permissive forum-selection clauses, instead applying the traditional *forum non conveniens* test. *See Networld Commc'ns Corp. v. Croatia Airlines, D.D.*, 2014 WL 4724625, at *2 (D.N.J. Sep. 23, 2014) (noting "a majority of courts have declined to apply *Atlantic Marine* in cases involving permissive forum selection clauses"); *see also Fin. Cas. & Sur., Inc. v. Parker*, 2014 WL 2515136, at *3 (S.D. Tex. June 4, 2014); *Residential Fin. Corp. v. Jacobs*, 2014 WL 1233089, at *3 (S.D. Ohio Mar. 25, 2014). Assuming arguendo, therefore, that the forum-selection clause at issue in this case is permissive, this Court will also employ the traditional *forum non conveniens* test.

The common-law (traditional) doctrine of forum non conveniens is described in Section II.A ("Standard of Review") above. As noted in that section, in order to dismiss a case under the doctrine of forum non conveniens, "dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Tang*, 656 F.3d at 246. In making this determination, the Court must consider whether an alternative forum is: (1) available; (2) adequate; and (3) more convenient in light of the public and private interest factors involved. *See Piper Aircraft*, 454 U.S. at 241.

As was discussed *supra*, the courts of the Province of British Columbia are both adequate and available, and the public interest factors weigh strongly in favor of dismissal. In this case, these conclusions are unaffected by the non-application of the *Atlantic Marine* modifications.

In evaluating a permissive forum-selection clause, a court must consider the plaintiff's choice of forum and the private interests of the parties. The traditional *forum non conveniens* analysis requires a court to give deference to Plaintiff's choice of forum, though less deference than usual, considering a valid yet presumably permissive forum-selection clause is still present in the parties' contract. *Networld Commc'ns*, 2014 WL 4724625, at *5. In applying the traditional *forum non conveniens* test, "though less deference is given to the [plaintiff's] choice of forum . . . Defendants 'must still prove that the private and public balancing factors outweigh the plaintiff's choice of forum, and the Court must find the balances are more than merely 'tipped' in favor of the defendants.'" *Id.* at *5 (quoting *Koger, Inc. v. O'Donnell*, 2007 WL 3232586, at *4 (D.N.J. Oct. 31, 2007)).

Here, as Defendant argues, the fact that the parties freely negotiated and agreed to a forum-selection clause that identifies the courts of the Province of British Columbia as a governing

jurisdiction should be given considerable weight. Moreover, the inclusion of a valid, yet presumably permissive, forum-selection clause included in the parties' contract requires the Court to give less deference to Plaintiff's original choice of forum.

As to the private interests, both parties enumerate but one further argument for weighing the relevant private interest factors in their favor—the availability of witnesses and relevant evidence. Defendant argues its witnesses and sources of proof are predominantly in the Province of British Columbia, whereas Plaintiff argues all of its witnesses are in North Carolina or "other U.S. states." In reference to "other U.S. states," Plaintiff, as stated earlier, is presumably referring to witnesses such as EZOT, Inc., the hosting provider, located in Houston, Texas. However, the Court does not find it convincing that Plaintiff would be at far greater expense to relocate its witnesses, like EZOT, Inc., to North Carolina from other states, e.g. Texas, than it would be to relocate them to British Columbia. On the other hand, it appears that all of Defendant's relevant witnesses are located in British Columbia. Ultimately, however, the Court views these arguments as largely in equipoise. Further, the physical evidence at issue in this case can be easily examined in either location. The public interests, which weigh strongly in favor of dismissal, are not diminished by consideration of the private interests.

Therefore, the Court finds that when weighed against the diminished deference given to Plaintiff's choice of forum under the circumstances of this case, the relevant public and private interests strongly favor the specific, adequate, and available forum specified in the forum-selection clause. Thus, dismissal would be warranted even were the Court to have concluded that the forum-selection clause in question was permissive.

For the foregoing reasons, the Court finds that dismissal on the grounds of *forum non conveniens* is warranted in this case under either the modified or traditional test.

**III.  DECRETAL**

      **IT IS, THEREFORE, ORDERED THAT**:

      (1)     Defendant Real Estate Webmasters, Inc.'s Motion to Dismiss as incorporated into its Answer (Doc. 6) is **DENIED AS MOOT**; and

      (2)     Defendant Real Estate Webmasters, Inc.'s, Motion to Dismiss (Doc. 10) is hereby **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE.**

                     Signed: August 21, 2017

                     Richard L. Voorhees
                     United States District Judge